# United States Court of Appeals for the Federal Circuit

---

**JOHN A. SHEA,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2019-2130

---

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00793-CFL, Senior Judge Charles F. Lettow.

---

Decided:  September 24, 2020

---

DANIEL M. ROSENTHAL, James & Hoffman, PC, Washington, DC, argued for plaintiff-appellant.  Also represented by LINDA LIPSETT, Bernstein & Lipsett, P.C., Washington, DC.

DAVID MICHAEL KERR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by ETHAN P. DAVIS, CLAUDIA BURKE, ROBERT EDWARD KIRSCHMAN, JR.

---

Before PROST, *Chief Judge*, REYNA and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge*.

John Shea appeals the decision of the United States Court of Federal Claims denying him liquidated damages following his employer's erroneous classification of his position as exempt from the overtime provisions of the Fair Labor Standards Act. Because the Court of Federal Claims did not err, we affirm the decision.

I

We begin with an overview of the applicable portions of the Fair Labor Standards Act (FLSA) and then review the facts of Mr. Shea's case.

A

The FLSA requires employers to pay employees at a rate at least one-and-one-half times the employee's regular rate for any hours worked in excess of 40 hours per week. *See* 29 U.S.C. § 207(a). But the FLSA exempts from these overtime requirements several types of employees, including those "employed in a bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. § 213(a)(1). If an employer violates § 207, it "shall be liable to the employee . . . [for the] unpaid overtime compensation . . . and [for] an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages." 29 U.S.C. § 260; *see also Bull v. United States*, 68 Fed. Cl. 212, 229 (2005), *clarified by* 68 Fed. Cl. 276 (2005), *aff'd*, 479 F.3d 1365, 1379 (Fed. Cir. 2007).

The FLSA applies to civilian employees of the federal government. *See* 29 U.S.C. § 203(d), (e)(2). The Office of Personnel Management (OPM) implements the requirements of the FLSA for most federal employees. OPM's regulations presume that every employee is covered by the FLSA "unless the employing agency correctly determines that the employee clearly meets the requirements of one or more of the exemptions [to the FLSA]." 5 C.F.R. § 551.202(a).

B

This appeal involves whether the Naval Criminal Investigative Service (NCIS) classified Appellant John Shea's position as exempt from the overtime requirements of the FLSA (hereinafter FLSA-exempt), albeit erroneously, in good faith and with reasonable belief that its classification did not violate the FLSA.

NCIS "investigates felony federal crimes, prevents terrorism, and protects secrets for the Navy and Marine Corps," and "defeats threats from across the foreign intelligence, terrorist, and criminal spectrum." *Shea v. United States,* 143 Fed. Cl. 320, 323 (2019) (original alterations omitted). In 2007, NCIS classified its GS-12 Investigations Specialist position as FLSA-exempt. The Investigations Specialist is a member of the Special Surveillance Team, which "supports criminal and counterintelligence investigations by conducting surveillance operations worldwide." *Id.* at 324. After serving in another role at NCIS, Mr. Shea began working as a GS-12 Investigations Specialist for NCIS's Special Surveillance Team in 2010. Since July 2014, Mr. Shea worked overtime, but because his position was classified as FLSA-exempt, he did not receive one-and-one-half pay for any hours over 40 per week.

Believing he was wrongly exempted from the FLSA's overtime provisions, Mr. Shea sued NCIS in July 2016. He alleged that NCIS's erroneous exemption decision

"deprived him of overtime and premium pay." *Id.* at 328. NCIS and Mr. Shea both filed motions for summary judgment on several grounds, including whether NCIS had willfully misclassified Mr. Shea's position. A willful misclassification extends the statute of limitations to three years, rather than two. 29 U.S.C. § 255(a). The Court of Federal Claims (hereinafter the trial court) granted summary judgment for NCIS that it had not willfully misclassified Mr. Shea. *Shea v. United States*, 136 Fed. Cl. 95, 113 (2018). That meant the relevant time period—when the cause of action accrued under 29 U.S.C. § 255(a)—began on July 1, 2014. *Cf. Shea*, 143 Fed. Cl. at 328, 328 n.12; Appellant's Br. 24 ("That 'act or omission' was NCIS'[s] treatment of [Mr.] Shea as exempt beginning in July 2014, the start of the relevant time period for the case.").

The trial court then held a two-day trial to hear testimony "regarding Mr. Shea's primary duty and the basis for NCIS's classification decision." *Shea*, 143 Fed. Cl. at 323. The testimony focused on the specifics of Mr. Shea's position—what his job responsibilities were at a granular level and how much time he spent on those responsibilities—as well as NCIS's classification practices. *See, e.g.*, *id.* at 324 (discussing testimony about how many missions the Surveillance Team conducted and how much time was spent in the field); J.A. 1378–84 (Shea Pay, Hours, and Overtime Calculations).

NCIS argued that Mr. Shea was FLSA-exempt under the administrative exemption, 29 U.S.C. § 213(a)(1). To fall under this exemption, an employee's primary duty,[1] or combination of duties, must involve: (1) "performance of office or non-manual work"; (2) "directly related to the

---

[1]    A primary duty "typically means the duty that constitutes the major part (over 50 percent) of an employee's work." 5 C.F.R. § 551.104.

management or general business operations, as distinguished from the production functions, of the employer"; and (3) "include[] the exercise of discretion and independent judgment with respect to matters of significance." 5 C.F.R. § 551.206; *see also* 29 C.F.R. § 541.200. The parties mainly debated the nature of the "team leader" duty included in the GS-12 Investigations Specialist position.

> On a rotational basis, [a] senior level [Investigations Specialist] will serve as the team leader during physical surveillance operations in support of counterintelligence investigations. The incumbent will be responsible for directing all aspects of the surveillance operation to include directing team members in the analysis, evaluation, and interpretation of information collected; overseeing the preparation of reports; coordinating with the SSA; and, providing expertise to team members in further development of a case.

J.A. 1205; *see Shea*, 143 Fed. Cl. at 338.

Accordingly, NCIS argued that Mr. Shea's primary duty was "managing the [Surveillance Team] in its execution of surveillance operations," and that he "serve[d] as [a] [t]eam [l]eader during more than a third of the time devoted to surveillance operations." *Id.* at 330. Mr. Shea argued that his primary duty was "performing surveillance" and that even when he was serving as team leader, he did largely "the same surveillance work as the rest of the team." *Id.* (quoting Mr. Shea's testimony).

The trial court ultimately found that the team leader duty was optional and comprised a minority of the Investigations Specialist position's duties. *Id.* at 331–32. The trial court found that Mr. Shea's primary duty was not management; it was "conducting surveillance in support of criminal and counterintelligence investigations, which would not qualify for the administrative exemption." *Id.* at

337.  NCIS therefore was liable for incorrectly classifying Mr. Shea's position as FLSA-exempt.  *Id.*

Turning to damages for this misclassification, the trial court awarded Mr. Shea compensatory damages and back pay.  *Id.*  But the trial court denied liquidated damages under 29 U.S.C. § 216(b) because it found NCIS's classification decision objectively reasonable and in good faith.  *Id.* at 337–40; *see* 29 U.S.C. § 260.

The trial court issued its decision on May 31, 2019 and a final judgment under Rule 54(b) of the Court of Federal Claims Rules on June 6, 2019.  We have jurisdiction over Mr. Shea's timely appeal from a final judgment of the Court of Federal Claims under 28 U.S.C. § 1295(a)(3).

II

Because the trial court has "broad statutory discretion" over the liquidated damages award, we review its ultimate decision to award or deny liquidated damages for abuse of that discretion.  *Bull v. United States*, 479 F.3d 1365, 1380 (Fed. Cir. 2007).  But first, the trial court must determine that the employer acted in good faith and with reasonable belief as § 260 requires.  *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991) ("Assuming a district court has first properly made the required preliminary findings of an employer's subjective good faith and objectively reasonable grounds for violating the Act, we will review its exercise of 'substantial discretion' to deny or limit an award of liquidated damages only for abuse of discretion.").  We review the fact finding underlying the good faith and reasonable belief determinations, and the finding of good faith itself, for clear error; and we review de novo the trial court's legal conclusion that an employer had a reasonable belief for its classification decision.  *Cf. id.*; *Bull*, 479 F.3d at 1380; *Adams v. United States.*, 350 F.3d 1216, 1221 (Fed. Cir. 2003); *see Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) ("The question of how the

respondents spent their working time . . . is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law . . . .").

On appeal, Mr. Shea does not argue that the trial court abused its discretion under 29 U.S.C. § 260. Instead, he argues that the trial court (1) based its decision to deny him liquidated damages on an incorrect interpretation of 29 U.S.C. § 260 and (2) erred in its good faith and reasonable belief determinations. We disagree on both points.

A

Mr. Shea first argues that the trial court legally erred in its interpretation of what § 260 requires. Again, § 260 grants the trial court discretion to deny liquidated damages if the employer shows that its classification decision, though erroneous, was in good faith and was made with "reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. The good faith prong requires a subjective showing. *E.g., Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008) ("The 'good faith' requirement is a subjective standard . . . ."); *Bull*, 68 Fed. Cl. at 229; *Martin v. United States*, 130 Fed. Cl. 578, 585 (2017). The reasonable grounds prong is objective. *E.g., Williams v. Tri–County Grower*s, 747 F.2d 121, 128 (3d Cir.1984) ("The reasonableness requirement imposes an objective standard by which to judge the employer's conduct."); *Hultgren v. Cty. of Lancaster, Neb.*, 913 F.2d 498, 509 (8th Cir. 1990); *Bull*, 68 Fed. Cl. at 229; *Martin*, 130 Fed. Cl. at 585 (2017).

According to Mr. Shea, the employer must provide evidence for both prongs—subjective good faith and objective reasonable belief—that is specific to the erroneous classification at issue and that shows actions the employer took before litigation began. Mr. Shea contends that it is not enough for the employer to simply show reasonableness or

good faith in general.  *See, e.g.*, Appellant's Br. 18–19 (citing *Thomas v. Howard Univ. Hosp.*, 39 F.3d 370, 373 (D.C. Cir. 1994)).

This argument attempts to recast as legal error a disagreement with the trial court's factual findings and its discretion regarding liquidated damages—discretion explicitly granted by statute.  We agree that the trial court would likely abuse its discretion by making findings of good faith and reasonable belief under § 260 solely resting on non-specific evidence or only on the employer's actions after an employee files suit.  But that is not what occurred here.

First, the trial court considered evidence specific to the GS-12 Investigations Specialist position in finding that NCIS classified Mr. Shea's position as FLSA-exempt in good faith and with reasonable belief in the propriety of the decision.  The trial court analyzed the position description and the parties' testimony specific to the position in finding that the position description could reasonably have been classified as exempt.  *See, e.g.*, *Shea*, 143 Fed. Cl. at 333–37 (comparing Mr. Shea's specific duties, including specific time percentages spent on each during the time period in question, to the criteria for the administrative exemption); *id.* at 338 (describing how the "team leader" duty could reasonably be interpreted as implicating the administrative exception); *id.* at 339 ("find[ing] nothing inherently unreasonable about relying" on the position description and an annual process where supervisors certify if a position description no longer matches duties).

Likewise, the trial court based its decision on pre-litigation evidence.  The trial court analyzed the GS-12 Investigations Specialist position description as it existed since at least 2009.  *See id.* at 325.  And though NCIS did not provide testimony on the original classification, the trial court relied on testimony from the chief of NCIS's Staffing,

Classification, and Compensation division, Stacy Cruz, about the agency's practices to "classify positions and review decisions" since she started her position in May 2015—a year before Mr. Shea filed suit. *Id.* at 338; J.A. 935–38.

Finally, we note that § 260 does not require, as a matter of law, documentation of the original classification decision. Even though the statute is phrased in the past tense, it refers only to "the act or omission giving rise to such action" generally—not the original classification decision. 29 U.S.C. § 260. And in light of the statute of limitations for unpaid overtime wages and liquidated damages under 29 U.S.C. § 255(a), to hold that § 260 may only be satisfied by documentation of the original classification— regardless of the employer's other actions in what may be many years between the classification and the litigation— would effectively require employers to classify positions every two to three years. For many employers, including NCIS, requiring such frequent classification would be untenable. Given no evidence that § 260 makes such a requirement, we will not impose one ourselves.

The trial court did not err in its interpretation or application of § 260.

B

We next consider Mr. Shea's contention that the trial court erred in its good faith and reasonable belief determinations.

1

To meet the objective reasonableness prong of § 260, an employer must show that it "had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260; *Chao*, 547 F.3d at 941. Though the Federal Circuit has not directly addressed the meaning of this text, the D.C. Circuit has held that § 260

requires an employer to show that it "relied on a reasonable, albeit erroneous, interpretation of the [FLSA] or of the regulations issued thereunder." *Thomas*, 39 F.3d at 373. Whether the employer had objectively reasonable grounds for its classification decision is a question of law we review de novo; however, we review the trial court's factual findings underlying its reasonable belief conclusion for clear error. *See supra* Section II. Mr. Shea has not shown that the trial court clearly erred in the factual findings underpinning its reasonable belief analysis. And we agree with the trial court's ultimate conclusion that NCIS's classification decision was objectively reasonable.

We first address whether the trial court clearly erred in any factual findings underpinning its reasonable belief analysis. At trial, NCIS argued that the GS-12 Investigations Specialist position qualified for the administrative exemption primarily because of the "autonomy, responsibility, and leadership" involved in the position, as evidenced by the position description itself. *Shea*, 143 Fed. Cl. at 338 (quoting NCIS's brief). The trial court heard and cited testimony about the nature of the GS-12 Investigation Specialist's duties, including as team leader. J.A. 988–1005 (describing the extensive duties of the team leader, including choosing an assistant team leader and proposing equipment to be used on the mission); J.A. 984–85 (Mr. Shea's supervisor, Dennis Freeman, testifying that he chose team leads based on their skills for the particular mission and that he frequently chose Mr. Shea as team leader because of his experience, demeanor, and camaraderie with others.). And again, as discussed previously in Section I, this testimony was specific to Mr. Shea's position and addressed duties Mr. Shea performed that preceded the litigation. The trial court did not clearly err.

We also agree with the trial court, that, on its face, the position description contains duties that could reasonably be interpreted as qualifying for the administrative

exemption—namely duties involving "office or non-manual work" related to "management or general business operations" and that require "the exercise of discretion and independent judgment with respect to matters of significance." 5 C.F.R. 551.206; 29 C.F.R. § 541.200; *Shea*, 143 Fed. Cl. at 338–39.

It is also instructive that the trial court required two days of testimony from Mr. Shea, his supervisor, and NCIS's classification witness to determine that NCIS's classification was erroneous. *See Shea*, 143 Fed. Cl. at 330 (analyzing Mr. Shea's primary duty based on extensive trial testimony); *id.* at 333 (detailing testimony on the percentage of time Mr. Shea spent on management or general business operations as part of the administrative exemption analysis). This strongly suggests that it was far from clear whether NCIS's classification decision was even incorrect, as a legal matter. *See Adams*, 350 F.3d at 1227 ("[I]t is relevant to the reasonable grounds inquiry under Section 260 that the question is uncertain, ambiguous, or complex.") (internal quotation marks and citation omitted). For example, the trial court explained that it appeared from the GS-12 Investigations Specialist position description that the team leader duty was mandatory; it took testimony from Mr. Freeman to make clear that it was optional, and that Mr. Shea did not spend enough time as a team leader for it to qualify as a primary duty. *See Shea*, 143 Fed. Cl. at 326, 337.

Here, to require more evidence than the trial court considered, as Mr. Shea urges, *see* Appellant's Reply Br. 7–14, would risk collapsing the objective and subjective prongs into a solitary subjective one. But it is a "cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute," *Williams v. Taylor*, 529 U.S. 362, 364, (2000), and § 260 requires both good faith and reasonable belief, *Laffey v. Nw. Airlines, Inc.*, 567 F.2d 429, 464 (D.C. Cir. 1976), *abrogated on*

*other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) ("The statutory call for reasonable grounds for a belief in compliance with the Act imposes a requirement additional to good faith, and one that involves an objective standard.").

Between the position description and the testimony of Mr. Shea, his supervisor, and NCIS's classification witness, the evidence supports the trial court's holding that NCIS reasonably believed that Mr. Shea's position had substantial managerial duties qualifying it for the administrative exemption to the FLSA, even if it was ultimately incorrect about the import and scope of those duties. We are not persuaded that the trial court erred in holding that NCIS had reasonable belief in its decision that the Investigation Specialist position was FLSA-exempt.

2

"To establish the requisite subjective 'good faith,' an employer must show that it took active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (internal quotation marks and citation omitted). *See also Addison v. Huron Stevedoring Corp.*, 204 F.2d 88, 93 (2d Cir. 1953) ("The 'good faith' of the statute requires, we think, only an honest intention to ascertain what the [FLSA] requires and to act in accordance with it."); *Beebe v. United States,* 640 F.2d 1283, 1295 (Ct. Cl. 1981). We review the trial court's finding of good faith for clear error. *See supra* Section II. *See also Laffey*, 567 F.2d at 464.

Here, the trial court found that "NCIS demonstrated an intent to comply with the [FLSA] by having a formal process to classify positions and review decisions, executed by a dedicated staff." *Shea*, 143 Fed. Cl. at 338. NCIS's classification witness, Ms. Cruz, testified that as part of the annual performance evaluation process, supervisors must

certify that the position description has not changed in the past year. *See id.*; J.A. 910–11, 956−57. Indicating that the position description has changed triggers a review and potential reclassification of the position. *Shea*, 143 Fed. Cl. at 338. No such change was flagged for Mr. Shea's position. J.A. 1043 (Mr. Shea's supervisor answering "Yes" when asked if he "recall[ed] confirming that the position description was accurate"). While NCIS did not formally classify Mr. Shea's position during the relevant time period, as we outlined in Section II A, *supra*, that is not required by § 260.

Mr. Shea compares the facts here to those in certain decisions of our sister courts addressing liquidated damages decisions. This comparison is misplaced. In those cases, the employers had no systems in place to comply with the FLSA—in fact some had not even heard of it. *See, e.g.*, *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 245 (4th Cir. 2016) (affirming the district court's good faith finding because the employer took over the business and assumed the employees were independent contractors without any "effort to look into the law or seek legal advice until he faced a lawsuit"); *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 841 (6th Cir. 2002) (reversing the district court's good faith finding because the employer offered no evidence of classification or compensation procedures "at the time its compensation plan was instituted or at any time [the employee in question] worked for the [employer]"); *Spires v. Ben Hill Cty.*, 980 F.2d 683, 690 (11th Cir. 1993) ("Although the County knew that the [employees] might be subject to the FLSA as early as 1986, it took no action whatsoever to investigate its compliance with this statute until it was contacted by the plaintiffs' counsel in September, 1987."); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d at 908 (overturning the district court's good faith finding because the employer merely followed the industry practice for compensation and admittedly "did

not do any analysis or conduct any inquiry to determine whether the subject employees qualified for an exemption" (emphasis omitted)).  Given the testimony on NCIS's formal classification practices during the time Mr. Shea worked there, including the year before he filed suit, these cases are unpersuasive.

Again, as with its reasonable basis determination, the trial court based its good faith finding on pre-litigation evidence specific to the erroneous classification of Mr. Shea's position as exempt.  Ms. Cruz testified about NCIS's practices starting in May 2015, which was over a year before Mr. Shea filed suit.  And the testimony showed that NCIS had a process for annually verifying that position descriptions accurately reflected job duties and for reviewing the position's FLSA classification if the duties had changed.  J.A. 910−11.  "In short, the findings of the Court of Federal Claims on the government's good faith have not been shown to be clear error, nor has any error of law been shown." *Adams*, 350 F.3d at 1229.

### III

We have considered Mr. Shea's remaining arguments and find them unpersuasive.  Though NCIS erroneously classified his position as FLSA-exempt, the Court of Federal Claims applied the correct legal standard to, and did not clearly err in its factual findings for, the good faith and reasonable belief inquiry under § 260.  We therefore affirm.

### AFFIRMED

No Costs.